**Department of Public Works and Buildings of the State of Illinois, etc., Petitioner-Appellee, v. William Klinefelter and A. Cecelia Klinefelter, Defendants-Appellants.**

Gen. No. 69–43.

Third District.

January 12, 1970.

McNeilly & Olivero, of Peru, and William J. Wimbis-cus, Jr., of Spring Valley, for appellants.

William J. Scott, Attorney General of State of Illinois, of Springfield (Bruno P. Bernabei, Special Assistant Attorney General, of Spring Valley, Donald C. Martin, Special Assistant Attorney General, of Princeton, of counsel), and Trimble & Trimble, of Princeton, for appellee.

ALLOY, J.

This is an appeal from an order of the Circuit Court of Bureau County granting leave to petitioner, Department of Public Works and Buildings of the State of Illinois, to amend its petition for condemnation, to correct the legal description of a certain tract. The order further found that defendants-appellants are not the owners of a certain triangular tract of land containing approximately 2.7 acres (which tract was included in the original petition for condemnation). The trial court denied a motion for a new trial in the cause.

The action for condemnation was filed on August 30, 1967, in furtherance of construction of Interstate 180 in Bureau County, Illinois. The petition named the defendants William Klinefelter and A. Cecelia Klinefelter as the record owners of tract numbered F–4 and F–4

Access. Listed in the petition as "others interested" were Einer C. Swenson, Trustee under the will of Florence Swenson; and Conrad and Sheila Swenson (whom the petition designated as "persons having a possible interest by virtue of boundary line dispute"). On May 16, 1968, plaintiff filed a motion for leave to amend the petition for condemnation and for correction of the legal description of Tracts F-4 and F-4 Access which involved the 2.7 acres. The motion also requested the dismissal of Einer C. Swenson, Trustee, and Conrad and Sheila Swenson as parties defendant. The Swensons filed an answer to such motion in which they concurred in such motion to amend and to dismiss the Swensons, but set forth in their answer that Klinefelters had no interest in the 2.7-acre tract as such 2.7-acre tract was the property of Einer C. Swenson, Trustee. Defendants-appellants, Klinefelter, moved to strike the answer of Swenson. As a result of the motions the issue was raised as to whether or not the Klinefelters were the owners of the 2.7-acre tract.

On November 26, 1968, an order was entered in the trial court finding that the Klinefelters had no interest in the 2.7-acre tract. The order made no finding as to who actually did own the 2.7-acre tract, but merely found that the Klinefelters did not own such tract. The evidence presented in the cause disclosed that the Klinefelters claimed title to the 2.7-acre tract by reason of a deed from John E. Nordstrom and wife dated February 28, 1949. The deed contained the following description:

> "The East Half of the Northwest Quarter of the Southwest Quarter of Section 24, in Township 15 N., R. 9 E. of the 4th P. M.;
>
> "The East Half of the Southwest Quarter of said Section 24; and

"Forty-two (42) acres off of the North end of the West Half of the Southeast Quarter of said Section 24, excepting therefrom the following:

"a. All that part thereof lying North of the public highway, containing ten and one-half (10½) acres, more or less, and heretofore deeded to Alba Miller, by deed recorded in Book 125 of Deeds at page 172, in the Recorder's Office of Bureau County, Illinois; and also

"b. Seven (7) acres off of the South side thereof, as particularly described in deed heretofore executed by Bessie O. Smith dated May 20, 1922, and recorded in said Recorder's Office in Book 197 of Deeds at page 395, and also

"c. All that part thereof lying East of the public highway running Northerly and Southerly over, through and across the East side of said West Half of said Southeast Quarter of said Section Twenty-four (24);

"subject to all rights of way thereon, thereover and thereacross;

"all of said real estate conveyed consisting of 123.5 acres, more or less, and being situated in the County of Bureau, in the State of Illinois."

There is no issue as to the correctness of the exceptions "a" and "b" for the ten and a half and seven acres shown respectively in the deed. Exception "c" is the exception involving the 2.7 acres in question in the instant case. A plat of the area admitted in evidence showed the Klinefelter tract with the road branching off from the old Route 29 going north and south along the easterly side of the Klinefelter tract and continuing in a southwesterly direction along the south side of the Klinefelter tract. It is asserted that if 10½ acres were

53

taken from the general description under exception "a" and seven acres under exception "b" and the acreage under exception "c," this would leave 24.5 acres to go along with the 100-acre additional tract covered by the deed. It is thus contended that this would only leave 121.8 acres which was less than the "123.5 acres more or less" referred to in the deed. It is also noted that if the 2.7-acre tract was added to the Klinefelter tract, the Klinefelters would have 124.5 acres or 1 acre more than described in the deed, where the acreage was described as "123.5 acres more or less."

It was also shown at the hearing that the Klinefelters had paid the 1966 taxes on property described in the tax roll as follows:

"S rd NE & W½ SE
Sec. 24–13–9 23.50A"

"E½ SW & E½ NW SW
Sec. 24–15–9 100. A"

Such amounts on the tax bill would total 123.5 acres but there is nothing in the tax receipt or bill to show that the 2.7-acre tract was included. Testimony on behalf of Klinefelters was to the effect that taxes had been paid in this manner for more than seven years. Although there were other contentions made as to this issue, it is not necessary that we consider them in view of our determination of the issue.

Testimony in the cause showed that the 2.7 acres in question was not tillable but was hilly and contained a gully. Cecelia Klinefelter testified that she and her husband had occupied the 2.7 acres in question since 1949 when they obtained the deed from the Nordstroms. She testified, "We own south of the road" referring to the south fork of the road. She stated, however, that she had never personally been on the 2.7-acre tract herself and had never seen any weed mowing or timber cutting

on the tract. She was vague as to whether there had been any activity in the tract and stated that she felt they were in possession "according to our taxes."

William Klinefelter, Jr., testified that he lived with his parents in 1949 until 1956 when he married. He described the 2.7-acre tract as "a gully wash." He stated that he cut firewood on the 2.7-acre tract from 1949 until 1956 and also hunted squirrels and collected walnuts on the tract during this period up until approximately two years before the condemnation. He stated that no one ever asked him to leave the 2.7-acre tract and he never asked for permission to hunt or cut trees on such tract since he believed his folks owned it. He stated that neither he nor his father ever farmed the 2.7 acres as it was not tillable. He did know that Alba Miller and the Swensons farmed the tillable ground south of the 2.7 acres in question. His testimony about fences was rather vague, although he stated that at one time the entire 2.7-acre tract was enclosed within a fence.

Alba Miller testified for the plaintiff. He stated he had lived in the area all of his life and had farmed the tillable ground south of the fork and testified it had been farmed for about 47 years. Mr. Miller never owned this land but farmed it as a tenant until Conrad Swenson began to farm it in 1961. He testified that he repaired the fence along the south side of the south fork of the road and made repairs on this fence as late as around 1949 and 1951. He stated he remembers no other fences around this 2.7 acre tract. He had cattle on the 2.7-acre tract until he stopped farming in 1951 and he knew of his own knowledge that Swenson had cattle on the tract after 1951 as he remembers seeing them on the tract. He stated he had been on the tract since 1951 as he helped Swenson pick corn and make hay in the area south of the south fork. He stated that he never saw any of the Klinefelters on the 2.7-acre tract and never saw any

evidence that anyone cut firewood on the tract. He also has hunted squirrels on the tract.

Einer Swenson testified that he was involved in an estate which he stated owned the 2.7-acre tract, and was familiar with the tract since 1924. He stated that from 1924 to 1940 he was on the 2.7-acre tract two or three times a year, but after 1940, he was on it two or three times a month as his son farmed the tillable land just south of the 2.7-acre tract. In 1954 he also moved into a home which was close to the 2.7-acre tract. He testified that he hunted on the 2.7-acre tract regularly and never saw any of the Klinefelters or anyone else other than members of his family or guests upon the 2.7-acre tract. He never saw evidence of any timber or firewood being cut on the 2.7-acre tract, such as stumps or branches, although he did testify that a Mr. White cut some timber on the tract in 1958 after he had given Mr. White permission to do so. Swenson also testified that the only fence he knew on the property was the fence on the south side of the south fork of the road and he helped to maintain this until they quit putting cattle in the area when the fence was not kept in repair. He stated that this fence was about 200 feet from the south fork of the road to the tillable land on the south. The description of the fence would show that it was designed to enclose the 2.7-acre tract with the land to the south.

The trial judge allowed the motion by plaintiff to amend the petition for condemnation which motion requested that the 2.7 acres be excluded from the proceeding. In effect, the court found that the Klinefelters had no interest in the 2.7-acre tract. The court made no finding as to the actual ownership of the 2.7-acre tract but merely found that the Klinefelters did not own it for the purposes of the case. As indicated, the Klinefelters moved for a new trial and such motion was denied.

The issues, therefore, were (1) whether the Klinefelters established title to the 2.7-acre tract by their deed from John E. Nordstrom and wife referred to, and (2) whether the Klinefelters had established any title to the 2.7-acre tract by virtue of any section of the Limitations Act; that is, whether the Klinefelters could establish title by adverse possession or could claim adverse possession under section 7 of the Limitations Act (1967 Ill Rev Stats, c 83, § 7).

It is clear that exception "c" excepted from the 42 acres "all that part thereof lying East of the public highway running northerly and southerly over, through and across the east side of the west half of the southeast quarter of Section Twenty-four (24) ; " and, also, that the deed specified that it conveyed 123.5 acres "more or less." From the plat in evidence it is clear that the road referred to was Township Road No. 287 which actually runs more east and west than north and south and it forms the north boundary of the 2.7 acres in question. This road, however, does run northerly where it joins Township Road No. 347, and after it goes to the west end of the 2.7-acre tract it does go southerly. We, therefore, feel that the trial court correctly concluded that the deed was referring to Township Road No. 287 when it spoke of "the public highway running northerly and southerly" over the east side of the tract being conveyed. Apparently, defendants do not seriously contend that this is not the road referred to in the deed, but base their argument chiefly on a reference in the deed to "123.5 acres, more or less." They point out that to except the 2.7 acres would leave them with only 121.8 acres. If, however, the 2.7 acres was included in their description they would have 124.5 acres which would be one more acre than the 123.5 acres referred to in the deed. Excluding the 2.7 acres would not be inconsistent

with the "more or less" reference to acreage in the deed.

We agree that the primary purpose in construing a deed is to discover the intent of the parties as determined from the wording of the deed and extraneous facts and circumstances if necessary (Patton v. Vining, 14 Ill2d 11, 150 NE2d 606). It is also true that where there is an ambiguity or question in construing the deed, the construction should be made in the manner most favorable to the grantee as against the grantor (Patton v. Vining, supra; Allendorf v. Daily, 6 Ill2d 577, 129 NE2d 673). We must, however, give consideration to other rules of construction such as pointed out in Schreier v. Chicago & N. W. Ry. Co., 96 Ill App2d 425, at 430, 239 NE2d 281, where the court states every word and phrase is to be given a meaning if possible. It has been determined, consistently, that where a tract of land is sold by a specific description by which its exact boundaries may be determined, the boundaries thus ascertained will control the description as to the quantity or number of acres. In the case of Branstetter v. Dahncke, 394 Ill 40, 67 NE2d 212, a deed conveyed one acre off the south side of Lot One, Block 35, being a tract of land having 107-feet frontage on South Second Street and running east and west 360 feet more or less. The area of 107 feet by 360 feet did not contain a full acre so the grantee contended that his line from Second Street back of his lot should angle north and go more than 360 feet to give him his full acre. The court, after speaking of the intent of the parties, stated specifically (at Page 44):

> ". . . that where there is a conflict between a quantity description and a metes-and-bounds description, the latter will prevail."

The court quoted from Seeders v. Shaw, 200 Ill 93, 65 NE 643, stating (at pages 45-46 of the Branstetter opinion):

> "The law is well settled that where a deed contains two descriptions, each of which is in itself complete, one describing the land conveyed by quantity and the other by metes and bounds, in case of conflict the description by metes and bounds will control and that by quantity will be rejected. Mr. Martindale, in his work on Conveyancing, (2d ed p 98) says: 'The quantity of land mentioned in a deed as being the number of acres conveyed must yield to the boundaries contained in the description, and if inconsistent with the actual area of the premises as thus ascertained it will be rejected.' In Cottingham v. Parr, 93 Ill 233, on page 236, the court says: 'It is also a rule that where land is described in a deed by monuments and quantity, and upon a survey they are not harmonious, the quantity must yield to the monuments. In fact, of all the indicia by which the boundaries of land are to be ascertained, that of quantity is held perhaps the least reliable. Quantity yields to course and distance, course and distance to monuments.' "

■ The rule referred to is applicable in the instant case and reference to 123.5 acres must yield to the specific exception of "all that part thereof lying east of the public highway." The reference excepting all land lying east of the public highway is as specific as a metes and bounds description, in the light of the evidence in this cause, and should prevail over a quantity description. We also note that the quantity description refers to 123.5 acres "more or less." We realize that if the 2.7 acres was not excepted it would give the defendants one acre

more or 124.5 acres and, if excepted, it results in a reduced acreage to 121.8 acres. We, therefore, conclude that there is no basis for stating that the exception "c" should be held ineffective, or that the Klinefelters were conveyed the 2.7 acres by the terms of the deed referred to. The exception cannot be ignored and the trial court was justified in determining that the deed did not convey the 2.7-acre tract.

The case of Higinbotham v. Blair, 308 Ill 568, 139 NE 909, where a deed conveyed the southeast quarter of section 12 "except 39.20 acres" is not a precedent inconsistent with the conclusion of the trial court in this case. There was nothing in the deed involved to show where the 39.20 acres was excepted from, and the court held in that case that this constituted a latent ambiguity and that the exception was, therefore, invalid. In the case of Attebery v. Blair, 244 Ill 363, 91 NE 475, where a deed conveyed property and excepted two acres which were not located in the description, was also consistent in holding that the exception was void. The two cases referred to have no application to the situation in the instant case where the area covered by the exception in the deed is clearly defined.

■■ The Klinefelters claimed to have obtained the land in 1949 and the condemnation proceeding was instituted in 1967. It is, therefore, apparent that they did not claim to hold the land for 20 years and claim title by adverse possession. There is also no evidence of such continuous and adverse possession of record. The defendants claim, however, that they have title by virtue of section 7 of the Limitations Act which provides as follows:

> "Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and judged

to be the legal owner of such vacant and unoccupied land, to the extent and according to the purpose of his or her paper title."

Assuming that defendants paid taxes for a period of seven years as indicated in the record, they nevertheless failed to show color of title which is required under the Act. Color of title was defined in Bergesen v. Clauss, 15 Ill2d 337, 155 NE2d 20, at pages 341–342:

"Color of title is not a claim of ownership that is defective for some technical reason, nor is it meant to be something just short of absolute title. Rather, color of title is an instrument or a record that in fact does not convey title but appears to have the effect of a conveyance. Color of title, then, need not be an imperfect title of a sort that could, without aider, ripen into absolute title. Color of title need only show some evidence of claimed ownership by the grantee. It need be only some semblance of title, however invalid may be that claim."

In the cause before us it is apparent that no color of title was shown since the deed from the Nordstroms clearly excepted the 2.7-acre tract. The record also discloses that defendants did not take possession of the 2.7-acre tract. The only direct testimony as to taking possession of the 2.7-acre tract was that of William Klinefelter, Jr., who testified that he cut wood on the land, hunted on it and collected walnuts. The testimony of Mr. Miller and Mr. Swenson established that they were familiar with the tract for 40 years, they had done the same acts as William Klinefelter, Jr., and they had never seen any of the Klinefelters on the land and never saw any evidence of the cutting of timber. They had also spent a great deal of time on the tract for various purposes. There was thus a conflict of evidence on the question of possession and the decision of the trial

judge in the cause before us was well within the range of the evidence presented. A court of review would not be authorized to reverse such decision on the basis of the record in this cause.

Since the trial court correctly found that the defendants Klinefelter failed to prove they had title to the premises in question, the Klinefelters could not require that condemnation proceedings be instituted against them or maintained against them. The orders of the trial court in this cause were, therefore, proper and should be affirmed.

Affirmed.

STOUDER, P. J. and RYAN, J., concur.